UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

YOLANDA YVETTE BELL,

        Plaintiff,

    v.

UNITED STATES DEP'T OF INTERIOR, KENNETH SALAZAR, Secretary,

        Defendants.

No.  2:12-cv-01414 TLN JFM (PS)

ORDER

I.     INTRODUCTION

      Presently pending before the court are four motions: plaintiff's amended motion to quash (ECF No. 101), plaintiff's amended motion for protective order (ECF No. 100), defendants' motion to compel independent medical examination (ECF No. 102) and defendants' motion for protective order (ECF No. 103).

      A hearing on the motions was held on August 7, 2013.  ECF No. 111.  After considering the supporting documentation and oral arguments, and for the reasons discussed at the hearing and infra, IT IS HEREBY ORDERED that: plaintiff's amended motion to quash is denied, plaintiff's amended motion for protective order is denied, defendants' motion to compel independent medical examination is granted, and defendants' motion for protective order is denied.

1

II.     PLAINTIFF'S ALLEGATIONS

Plaintiff is a former GS-14 Supervisory Contract Specialist for the Department of the Interior Bureau of Reclamation ("DOI/BOR").  Am. Compl., ECF No. 5 at 4.  On January 12, 2012, plaintiff filed her amended complaint alleging violations of (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; (2) the Rehabilitation Act of 1973, 29 U.S.C. §§ 710 et seq.; (3) reprisal for engaging in protected activities; and (4) a hostile and abusive work environment.  Id.

In her second amended complaint, plaintiff makes the following relevant allegations:

> Defendant's conduct is discriminatory with respect to my race, color, disability, association with a disabled person, and retaliation for protected activity.  Plaintiff contends that DOI/BOR officials discriminated against her by removing her from her Supervisory Contract Specialist position, reassigning her to work for her staff, denying a wage grade increase, revocation/denial of family medical leave and issuing an unsatisfactory performance review because of her race (African-American), her disability (Chronic Fatigue Syndrome with Cognitive Impairment) and her association with a disabled person and caregiver status (her sister).  Plaintiff further asserts that management retaliated against her for having complained about such discrimination, and whistleblowing, created a hostile working environment for her *caused her to suffer major depression, post-traumatic stress disorder, anxiety and exacerbated her chronic fatigue syndrome and cognitive impairment, and denied her family medical leave act leave for her dependent for whom she stands in loco parentis.*

Id. at 2-3 (emphasis added).  Plaintiff seeks, *inter alia*, "[t]he sum of $300,000.00 in compensatory damages for pain and suffering due to the discrimination and retaliation, according to proof, Medical bills."  Id. at 8.

In her initial disclosures, plaintiff identified her psychotherapist, Dr. Thomas Kunzig, as a witness, and indicated she sought damages for medicine, doctors, hospitals and therapy for both past and future medical expenses.  ECF No. 88-4 at 14, 16.  In defendants' first set of interrogatories, plaintiff was asked to itemize all damages she claims to have sustained as a result of the events she alleged in her first amended complaint.  ECF No. 88-5 at 5.  In her response, plaintiff itemized the following as "Non-Pecuniary – Pain and Suffering":

> Loss of enjoyment of life, anxiety, isolation, deterioration of social life, social isolation, loss of family connections, loss concentration, exacerbation of preexisting conditions (chronic fatigue syndrome

2

1
2
3
4
5
6

causing cognitive impairment), severe depression, TMJ, financial hardship, inability to pay bills, injury to credit standing, loss of health, forced to sell parents things, headaches, helplessness, hopelessness, insecurity about future, nightmares, self-esteem, weight gain, embarrassment, destruction of ability to trust, sleeplessness, post-traumatic stress, excessive fatigue, malaise, myalgia, loss of motivation, loss of desire, frustration, paranoia, injury to character and reputation, loss of career, belief career is over, fear, panic, crying, uselessness, thoughts of death, inconvenience, jaw pain, dental pain, joint pain, grinding teeth, gastrointestinal disorder (diverticulosis).

7   Id. at 6-7.

8   III.     PLAINTIFF'S MOTIONS TO QUASH

9          A.     Legal Standard

10         As set forth in Federal Rule of Civil Procedure ("Rule") 26(b)(1), "[p]arties may obtain

11   discovery regarding any non-privileged matter that is relevant to any party's claim or defense

12   . . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably

13   calculated to lead to the discovery of admissible evidence."  Relevancy at this stage of an action

14   has been construed broadly to "encompass any matter that bears on, or that reasonably could lead

15   to other matter that could bear on, any issue that is or may be in the case."  Oppenheimer Fund,

16   Inc. v. Sanders, 437 U.S. 340, 351 (1978) (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)).

17         However, Rule 45(c)(3)(A) provides that "[o]n timely motion, the issuing court must

18   quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a

19   [non-party] to travel more than 100 miles . . . ; (iii) requires disclosure of privileged or other

20   protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."

21   Further, Rule 45(c)(3)(B) provides that "[t]o protect a person subject to or affected by a subpoena,

22   the issuing court may, on motion, quash or modify the subpoena if it requires: (i) disclosing a

23   trade secret or other confidential research, development, or commercial information; (ii)

24   disclosing an unretained expert's opinion or information . . . ; or (iii) a [non-party] to incur

25   substantial expense to travel more than 100 miles to attend trial."

26         A party has standing to seek to quash a subpoena served on a third party, pursuant to Fed.

27   R. Civ. P. 45(c)(3), based on a claim that the subpoena infringes upon the movant's legitimate

28   and privileged interests.  United States v. Tomison, 969 F. Supp. 587, 596 (E.D. Cal. 1997)

1  (citations omitted); <u>Moon v. SCP Pool Corp.</u>, 232 F.R.D. 633, 636 (C.D. Cal. 2005). A litigant's

2  privacy interest in her confidential medical records is not absolute but conditional; a limited

3  impairment of the right may be properly justified.  <u>Soto v. City of Concord</u>, 162 F.R.D. 603, 618-

4  619 (N.D. Cal. 1995).  The determination requires a balancing of plaintiff's privacy rights against

5  defendants' need for the information.  <u>Id.</u> (and cases cited therein).  "The test . . . is not relevance-

6  the records may be highly relevant-but the test is whether the privilege has been waived by

7  putting the privileged information 'at issue.'"  <u>E.E.O.C. v. Serramonte</u>, 237 F.R.D. 220, 224

8  (N.D. Cal. 2006) (citing <u>Fritsh v. City of Chula Vista</u>, 187 F.R.D. 614, 632 (S.D. Cal. 1999)

9  (finding plaintiff did not waive privilege because, among other things, "she does not allege that

10  she suffered a psychiatric injury or disorder as a result of the defendants' conduct; she does not

11  claim to suffer from unusually severe emotional distress; and she does not intend to offer expert

12  testimony regarding her emotional distress")).

13        With regard to a psychotherapist-patient privilege, the Supreme Court has explicitly

14  recognized the existence of a psychotherapist-patient privilege, which protects all confidential

15  communications between a person and a licensed psychiatrist, psychologist, or social worker.

16  <u>Jaffee v. Redmond</u>, 518 U.S. 1, 8-17 (1996); <u>see</u> <u>also</u> <u>United States v. Chase</u>, 340 F.3d 978, 983-

17  84 (9th Cir. 2003). The privilege may be waived where the patient's specific medical condition is

18  placed into issue.  <u>Maynard v. City of San Jose</u>, 37 F.3d 1396, 1402 (9th Cir. 1994) (finding the

19  plaintiff "waived any privilege protecting his psychological records when he put his emotional

20  condition at issue"); <u>EEOC v. Cal. Psychiatric Transitions</u>, 258 F.R.D. 391, 399 (E.D. Cal. 2009).

21        B.    Analysis

22        The following third party subpoenas are at issue in plaintiff's operative motion to quash:

23        (1)    Custodian of Records, Kaiser PMG Pharmacy Department, Downey, CA, seeking
               "[a]ll pharmacy records (hard copy or electronic) including all paper or
24             electronically stored documents." (ECF No. 101-5 at 11-17);

25        (2)    Custodian of Records, County of Sacramento Department of Health and Human
               Services, In-Home Supportive Services, Sacramento, CA, seeking "1. Applications
26             by [plaintiff] on behalf of Anastasia V. Adams for services under the In-Home
               Supportive Services (IHSS) program; 2. Billing records, invoices received, and
27             payments made under the IHSS program for the care of Ms. Adams; 3.
               Investigative files relating to [plaintiff] or Ms. Adams; 4. Any and all other
28             records." (ECF No. 101-5 at 18-24);

4

1       (3)     Custodian of Records, Department of Health Care Services, Investigations Branch,
                Sacramento, CA, seeking the same records described in (2) above (ECF No. 101-5
2               at 25-31);

3       (4)     Kaiser Foundation Health Plan of Northern California, Sacramento, CA, seeking
                plaintiff's medical records (ECF No. 101 at 3; ECF No. 106 at 2); and
4
5       (5)     Sacramento Department of Health and Human Services, In-Home Supportive
                Services, Sacramento, CA, deposing the person most knowledgeable regarding
                plaintiff's status as an in-home caregiver (ECF No. 106 at 4).[1]
6

7           Plaintiff moves to quash defendants' third party subpoenas on the following grounds:  (1)

8   the time period is unreasonable; (2) the requests are duplicative of information defendants are

9   already in possession of; (3) the subpoenas seek privileged information of plaintiff's sister, Ms.

10  Adams; (4) failure to provide a reasonable amount of time to reply and improper service; and (5)

11  invasion of plaintiff's privacy because she did not waive the psychotherapist-patient privilege.[2]

12  For the reasons discussed below, plaintiff's motion to quash is denied.

13          With regard to an unreasonable time period, plaintiff moves to quash medical records that

14  pre-date her employment with defendants.  ECF No. 101-4 at 2, 7.  However, in her complaint,

15  plaintiff alleges that her employment conditions "exacerbated her chronic fatigue syndrome and

16  cognitive impairment."  ECF No. 5 at 3.  These allegations place plaintiff's preexisting medical

17  conditions, mental and physical, at issue in this action.  Therefore, the timeframe will not be

18  limited to plaintiff's employment with defendants.

19          With regard to duplicative information, plaintiff argues that defendants already possess

20  some of the information they seek to discover which renders the requests "unreasonably

21

22  [1] Plaintiff has removed the following third party subpoenas from her motion to quash:  (1)
    Thomas Kunzig, Alexandria, VA; (2) Kaiser Medical Center, Fairfax, VA; (3) Department of
    Defense, Washington, DC; (4) Kaiser Permanente, Rockville, MD; and (5) P.A. Newton, M.D.,
23  Baltimore, MD.  ECF No. 101 at 4-5.  It is unclear in her motion if plaintiff is in fact removing
    the subpoena for Dr. Newton's records.  However, plaintiff indicates that a motion "has been
24  Noticed to be heard by the Court in the District of Maryland" so the court assumes plaintiff is not
    seeking a duplicate motion to quash in this district.  Id. at 5.  Nevertheless, the court lacks
25  jurisdiction to hear a motion to quash a subpoena issued in another district.  See Fed. R. Civ. P.
    45(c)(3)(A) (authorizing "the issuing court" to quash or modify a subpoena); see also S.E.C. v.
26  CMKM Diamonds, Inc., 656 F.3d 829, 832 (9th Cir. 2011).

27  [2] The court notes that plaintiff appears to not have properly amended her motion to exclude
    arguments related to third party subpoenas she is no longer pursuing.  To the extent plaintiff's
28  amended motion contains moot arguments; the court will not address these arguments.

1    duplicative." ECF No. 101-4 at 5-7.  However, the documents plaintiff claims defendants already

2    possess are her personnel files and performance appraisals. Id. at 6-7.  These are unrelated to the

3    third party subpoenas at issue which seek plaintiff's medical records and records pertaining to

4    plaintiff's status as a caregiver.

5           With regard to Ms. Adams' personal information, plaintiff argues that defendants are not

6    entitled to the release of information pertaining to her sister, Ms. Adams.  ECF No. 101-4 at 10.

7    However, a party only has standing to move to quash a third party subpoena based on a claim that

8    the subpoena infringes upon the movant's legitimate and privileged interests.  Tomison, 969 F.

9    Supp. at 596.  Here, plaintiff has failed to establish that she has standing to assert a claim that the

10   subpoenas infringe on Ms. Adams' privileged interests.  Moreover, defendants clarified during

11   the hearing that they are not seeking Ms. Adams' medical records, and that any records already

12   produced have been properly redacted.  See ECF No. 106 at 3.

13          With regard to the amount of time provided to reply and proper service, plaintiff argues

14   two procedural deficiencies in defendants' third party subpoenas.  ECF No. 101-4 at 2

15   ("reasonable time to comply"), and 3 (improper service).  As discussed above, the general rule is

16   that a party has no standing to move to quash a subpoena served upon a third party except as to

17   privilege claims relating to any documents being sought.  Here, plaintiff's arguments are

18   procedural and therefore fail.[3]

19          Finally, plaintiff argues the subpoenas are an invasion of plaintiff's privacy because she

20   did not waive the psychotherapist-patient privilege.  Plaintiff relies on the case of Fitzgerald v.

21   Cassil, 216 F.R.D. 632, 634 (N.D. Cal. 2003), in support of her argument that she "has not made a

22   claim for bodily injury other than that directly and immediately linked to emotional distress, nor

23   received any medical treatment for any purely physical injury."  However, plaintiff's argument

24   here fails because she has in fact made a claim for bodily injuries.  See ECF No. 88-5 at 6-7

25   (plaintiff claims damages for, among other things, loss of concentration, TMJ, loss of health,

26

27   [3] To the extent plaintiff argues that the third party subpoenas are "overbroad," ECF No. 101-4 at
     10, the court finds plaintiff lacks standing to assert this argument as well.  See Tomison, 969 F.
     Supp. at 591 ("This is because no matter what interest a party to whom the subpoena is not
28   directed may have, it does not arise out of the difficulty of compliance.").

6

1   headaches, weight gain, malaise, myalgia, jaw pain, dental pain, joint pain, grinding teeth, and

2   gastrointestinal disorder (diverticulosis)).  Moreover, plaintiff has made a claim for more than a

3   garden-variety emotional distress.  In her operative first amended complaint, plaintiff alleges

4   injuries in the form of "major depression, post-traumatic stress disorder, [and] anxiety."  ECF No.

5   5 at 2-3.

6       Although the Fitzgerald case on which plaintiff relies found that the plaintiffs did not

7   waive the psychotherapist-patient privilege, Fitzgerald, 216 F.R.D. at 639, in reaching its holding

8   the court pointed out that the plaintiffs "will not affirmatively rely on any treating

9   psychotherapist," and plaintiffs "have not alleged a specific psychiatric injury or disorder or

10  unusually severe emotional distress extraordinary in light of the allegations."  Id.  That stands in

11  sharp contrast to the case here.  Thus, Fitzgerald is simply inapposite.

12      Here, plaintiff has provided her psychotherapist, Dr. Thomas Kunzig, in her initial

13  disclosures as a witness who "[w]ill testify to diagnoses and affects the discrimination and hostile

14  work environment has had on plaintiff."  ECF No. 88-4 at 14.  Plaintiff has directly placed in

15  issue the treatment, records, opinion and bases for those opinions of Dr. Kunzig.  Finally, as

16  discussed above, plaintiff has alleged specific psychiatric injuries such as "post-traumatic stress

17  disorder."  ECF No. 5 at 2-3.

18      The court finds that plaintiff has waived the psychotherapist-patient privilege by placing

19  her medical conditions, both physical and mental, at issue in this action.  See E.E.O.C. v.

20  California Psychiatric Transitions, 258 F.R.D. 391, 400 (E.D. Cal. 2009) (Distinguishing

21  Fitzgerald and finding that the psychotherapist-patient privilege was waived by plaintiff because

22  "the emotional distress damages is the crux of Plaintiff's claim. The fact that [plaintiff] is being

23  treated for depression suggests that multiple causation for her emotional distress may exist. The

24  emotional distress she allegedly suffered as a result of the sexual harassment could have been

25  [a]ffected by her depression and [vice] versa. Defendant should be able to determine whether

26  Plaintiff's emotional state may have been [a]ffected by something other than Defendant's alleged

27  actions."); see also Duncan v. Upjohn Co., 155 F.R.D. 23, 25 (D. Conn. 1994) (good cause found

28  where plaintiff alleged ongoing injury and intended to present expert testimony); Womack v.

1    Stevens Transport, Inc., 205 F.R.D. 445, 447 (E.D. Pa. 2001) (present inability to work due to

2    psychological injury); Gattegno v. Pricewaterhousecoopers, LLP, 204 F.R.D. 228, 232 (D.Conn.

3    2001) (plaintiff alleged that she "has suffered and will continue to suffer damages, including . . .

4    mental anguish, physical and emotional distress, humiliation and embarrassment.").

5         For the reasons discussed above, the court finds that plaintiff has placed her medical and

6    caregiver records at issue in this action and her motion to quash is therefore denied.

7    IV.    PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

8         A.    Legal Standard

9         Rule 26(b)(2)(C) provides that "[o]n motion or on its own, the court must limit the

10   frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines

11   that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from

12   some other source that is more convenient, less burdensome, or less expensive; (ii) the party

13   seeking discovery has had ample opportunity to obtain the information by discovery in the action;

14   or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering

15   the needs of the case, the amount in controversy, the parties' resources, the importance of the

16   issues at stake in the action, and the importance of the discovery in resolving the issues."

17        B.    Analysis

18        Plaintiff moves the court for a protective order on the grounds that (1) the documents

19   defendants seek are duplicative; (2) the documents seek official personnel files which are an

20   invasion of her privacy; (3) improper service; and (4) some documents are irrelevant.  Plaintiff

21   also seeks to limit the date range of the documents and to have the documents sealed.  To the

22   extent plaintiff's arguments have been addressed in the analysis above regarding her motion to

23   quash, the court will only briefly address them here.[4]  For the reasons discussed below, plaintiff's

24   motion for a protective order is denied.

25   /////

26

27   [4] The court notes that, as with plaintiff's amended motion to quash, plaintiff appears to not have
     properly amended her motion for protective order to exclude arguments related to third party
     subpoenas she is no longer pursuing in this district.  To the extent plaintiff's amended motion
28   contains moot arguments, the court will not address these arguments.

1    With regard to duplicative documents and official personnel records, plaintiff argues the

2    personnel files defendants seek to discover have already been received and are protected.  ECF

3    No. 100 at 7-8.  However, as discussed above, the subpoenas at issue in this court seek the

4    discovery of plaintiff's medical records and records pertaining to plaintiff as a caregiver which

5    are unrelated to plaintiff's personnel files.[5]

6    With regard to improper service, plaintiff argues the third party subpoenas fail because

7    they were not served properly.  ECF No. 100 at 9.  As discussed above, plaintiff does not have

8    standing to object to the method of service as the subpoena was directed to a third party, not

9    plaintiff.  Tomison, 969 F. Supp. at 596.

10    With regard to relevance, plaintiff argues that the documents pertaining to her caregiver

11    status are irrelevant to this action.  ECF No. 100 at 12.  However, plaintiff has put her caregiver

12    status at issue.  In her operative first amended complaint, plaintiff alleges she was discriminated

13    against based on "her association with a disabled person and caregiver status."  ECF No. 5 at 3.

14    Plaintiff also alleges she was "denied her family medical leave act leave for her dependent."  Id.

15    at 3.  The documents defendants seek are relevant to at least some of plaintiff's allegations.  Fed.

16    R. Evid. 401; Fed. R. Civ. P. 26(b)(1) ("parties may obtain discovery regarding any non-

17    privileged matter that is relevant to any party's claim or defense"); Zoom Imaging, L.P. v. St.

18    Luke's Hosp. and Health Network, 513 F. Supp. 2d 411, 413 (E.D. Pa. 2007) ("Even if it may not

19    be admissible at trial, [] evidence is discoverable if it appears reasonably calculated to lead to the

20    discovery of admissible evidence.").  Moreover, as clarified during the hearing, because plaintiff

21    has alleged she was discriminated against based on her status as a caregiver, defendants are

22    entitled to seek production of the documents related to her caregiver status in an effort to defend

23    these allegations by showing that their actions were based on "genuine performance issues."  ECF

24    No. 106 at 5-6 (positing that, for example, plaintiff may not have properly performed her work

25    duties because she was "simultaneously working 70 hours a week at another job").  Whether this

26    defense is plausible is a question to be addressed at a later stage.  At this stage in the litigation,

27    _____

[5] During the hearing, plaintiff expressed concern regarding non-parties having access to her
records.  As discussed at the hearing, the court recommends the parties submit a stipulated

28    protective order for the court's approval.

9

1    defendants are entitled to discover these records because they are relevant to plaintiff's

2    allegations as well as defendants' defense thereto.

3          Plaintiff's request to seal the documents produced in response to defendants' third party

4    subpoena is denied.  As the court noted at the hearing, these discovery documents are not to be

5    filed with the court until such times as they are offered in support of or opposition to a motion or

6    as evidence at trial.  E.D. Cal. Local Rules 250.1(a), 250.1(c), 250.3(c), 250.5(c); See also Zoom

7    Imaging, L.P., 513 F. Supp. 2d at 413.  If defendants choose to submit any of the documents

8    obtained through discovery, they are bound to redact the documents in accordance with the Local

9    Rule 140.  Moreover, plaintiff can move to seal any submitted records at that time.  However,

10   plaintiff is reminded of the strong presumption in favor of access of judicial records.  See

11   Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1178-79 (9th Cir. 2006).  At this

12   point, the court must merely determine whether defendants are permitted to discover plaintiff's

13   medical and caregiver records.  As discussed above, they are.

14         Finally, plaintiff argues that defendants' discovery requests should be limited to two

15   different claimed time periods.[6]  ECF No. 100 at 3.  However, in her operative first amended

16   complaint, plaintiff seeks damages for exasperated preexisting conditions and for future medical

17   bills which would indicate a broad range.  Therefore, the court finds a limited date range is not

18   reasonable, given plaintiff's allegations.

19         For the reasons discussed above, the court finds the documents defendants seek are

20   relevant and not protected by a privilege as plaintiff has put her physical and mental health and

21   caregiver status at issue.  Therefore, plaintiff's motion for a protective order is denied.

22   V.    DEFENDANTS' MOTION TO COMPEL MEDICAL EXAMINATION

23         A.    Legal Standard

24         Rule 35(a) provides, in relevant part:

25              When the mental or physical condition . . . of a party . . . is in
                controversy, the court in which the action is pending may order the
26

27   [6] During the hearing plaintiff expressed concern regarding third party subpoenas that request
     medical records dating back to January 1, 2001.  While those subpoenas were issued in Virginia
     and Maryland, see ECF No. 101-5 at 32-45, the court finds that discovery in this case this should
28   not be limited to the date ranges argued by plaintiff, given her allegations.

1
2
3
4

> party to submit to a physical or mental examination by a suitably
> licensed or certified examiner . . . .  The order may be made only on
> motion for good cause shown and upon notice to the person to be
> examined and to all parties and shall specify the time, place,
> manner, conditions, and scope of the examination and the person or
> persons by whom it is to be made.

5   "The 'in controversy' and 'good cause' requirements of Rule 35 . . . are not met by mere

6  conclusory allegations of the pleadings-nor by mere relevance to the case-but require an

7  affirmative showing by the movant that each condition as to which the examination is sought is

8  really and genuinely in controversy and that good cause exists for ordering each particular

9  examination."  Schlagenhauf v. Holder, 379 U.S. 104, 118 (1964).  "A plaintiff in a negligence

10  action who asserts mental or physical injury . . . places that mental or physical injury clearly in

11  controversy and provides the defendant with good cause for an examination to determine the

12  existence and extent of such asserted injury."  Id. at 119. That principle applies with equal

13  validity here.

14   B.   Analysis

15   Defendants argue that an independent medical examination pursuant to Fed. R. Civ. P.

16  35(a) is appropriate, given the allegations in plaintiff's first amended complaint.  Defendants

17  argue that plaintiff's specific allegations of psychological injury, and the fact that she sought

18  treatment for the same, puts her mental state at issue.  Defendants have scheduled an independent

19  medical examination in Maryland for August 21, 2013.[7]  ECF No. 112.  Following the hearing on

20  defendants' motion, plaintiff filed an opposition brief as instructed at the hearing.  ECF No. 128.

21  She argues that "[a]n open ended invasive test with no stated parameters or boundaries is an

22  invasion of personal privacy" and traveling to Maryland presents a hardship for her.  Id.

23   For the reasons discussed below, defendants' motion to compel independent medical

24  examination is granted, and plaintiff shall be ordered to appear at the independent medical

25  examination on August 21, 2013.

26  /////

27

28

[7] Pursuant to plaintiff's request during the court's hearing, defendants rescheduled the August 22, 2013, independent medical examination to August 21, 2013.  ECF No. 112.

11

1    In this action, plaintiff is seeking "$300,000.00 in compensatory damages for pain and

2    suffering due to the discrimination and retaliation, according to proof, Medical bills."  ECF No. 5

3    at 8.  Plaintiff's damages include past and future medical bills.  See ECF No. 88-4 at 16

4    (itemizing damages including past medical bills in the amount of $45,875 and future medical

5    expenses in the amount of $458,749.98).  Plaintiff also alleges that the discrimination and hostile

6    work environment "exasperated her chronic fatigue syndrome and cognitive impairment."  ECF

7    No. 5 at 3.  As noted above, plaintiff has alleged the following physical and psychological

8    injuries:  "major depression, post-traumatic stress disorder, anxiety and exacerbated . . . chronic

9    fatigue syndrome and cognitive impairment."  ECF No. 5 at 3.  Plaintiff also claims the following

10   physical and psychological injuries:

11
12   [l]oss of enjoyment of life, anxiety, isolation, deterioration of social
     life, social isolation, loss of family connections, loss concentration,
     exacerbation of preexisting conditions (chronic fatigue syndrome
13   causing cognitive impairment), severe depression, TMJ, . . . , loss
     of health, . . . , headaches, helplessness, hopelessness, insecurity
14   about future, nightmares, self-esteem, weight gain, embarrassment,
     destruction of ability to trust, sleeplessness, post-traumatic stress,
15   excessive fatigue, malaise, myalgia, loss of motivation, loss of
     desire, frustration, paranoia, . . . , belief career is over, fear, panic,
16   crying, uselessness, thoughts of death, inconvenience, jaw pain,
     dental pain, joint pain, grinding teeth, gastrointestinal disorder
     (diverticulosis).
17

18   ECF No. 88-5 at 6-7.  As discussed in the court's analysis above, the fact that plaintiff alleges

19   numerous health-related injuries, sought treatment for these injuries, and seeks damages for past

20   and future medical expenses, puts plaintiff's mental state "genuinely in controversy."

21   Schlagenhauf, 379 U.S. at 118.  Defendants must respond to plaintiff's allegations and are

22   entitled to conduct a professional examination of plaintiff, including the taking of a careful and

23   detailed history of her symptoms, past stressors and treatment, to determine the extent of the

24   alleged injuries, and whether other factors may have contributed to or exacerbated them.  See

25   Javeed v. Covenant Med. Ctr., Inc., 218 F.R.D. 178, 181 (N.D. Iowa 2001) (finding good cause

26   for Rule 35(a) exam where plaintiff alleged extreme emotional distress and sought mental health

27   care therefor); Bethel v. Dixie Homecrafters, Inc., 192 F.R.D. 320, 323 (N.D. Ga. 2000) (good

28   cause for a Rule 35 mental health exam because the defendants showed that questions remained

12

1    whether the plaintiff's mental health problems resulted from defendant's actions or from other life

2    events).

3           In her opposition, plaintiff also expressed concern regarding the location of the

4    examination.  ECF No. 128.  Plaintiff states that she has Achilles bursitis tendonitis and is

5    required to wear a boot to immobilize her foot.  Id.  Plaintiff provided several pages of medical

6    records to support her condition.  ECF No. 128-1.  In particular, plaintiff provided a May 17,

7    2013, verification of treatment from her physician indicating that plaintiff "is unable to drive with

8    the boot on and has difficulties driving with it off."  Id. at 4.  The verification was prepared ninety

9    days ago, and requested telework for plaintiff until June 3, 2013.  Id.  The court notes that

10   plaintiff's treating physician requested telework for plaintiff for only two weeks, and plaintiff did

11   not provide any additional information regarding her treating physician's re-evaluation of her

12   condition.  These dated medical records are insufficient to support plaintiff's hardship argument.[8]

13   Moreover, defendants have already extended plaintiff an extraordinary accommodation by setting

14   the examination in a city reasonably close to where plaintiff resides rather than in this district.

15   The court will not order defendants to locate a qualified doctor in plaintiff's state when

16   defendants have already made a good faith effort to accommodate plaintiff's location by not

17   moving this court to order plaintiff to appear for an independent medical examination in

18   California, where plaintiff initiated this litigation.  The location for the examination is in

19   reasonable proximity to the location where plaintiff resides and any inconvenience or burden

20   from driving to the exam is minimal in contrast to the burden plaintiff will face by proceeding to

21   trial in this case.

22          For the reasons set forth above, defendants' motion for an independent medical

23   examination is granted, and plaintiff shall be ordered to appear on August 21, 2013, for the

24   examination.

25   _____
     [8] The court also notes that, during the hearing, the court questioned plaintiff regarding what
     additional arguments she contemplated presenting in a subsequent opposition to defendants'
26   motion for an independent medical examination.  While pointing out that she had not researched
     this issue, plaintiff stated that she was concerned with the doctor, the scope of the examination,
27   the date of the examination, and specifically that the drive to Maryland would be too long because
     of the traffic.  However, plaintiff failed to mention the medical condition she now presents in her
28   opposition, despite having been given an opportunity to do so at the hearing.

                                                    13

1    VI.    DEFENDANTS' MOTION FOR PROTECTIVE ORDER

2           In their motion, defendants seek an order requiring plaintiff "(1) to obtain court approval

3    prior to filing further motions to quash subpoenas and (2) to withdraw the District of Columbia

4    and District of Maryland motions to quash." ECF No. 103 at 2.  For the reasons discussed below,

5    defendants' motion for protective order is denied.

6           Defendants seek an order directing plaintiff to withdraw her out of district motions to

7    quash.  However, as defendants correctly pointed out in their original opposition to plaintiff's

8    motion to quash, plaintiff's motion to quash subpoenas issued in another district were not

9    properly before this court.  See S.E.C, 656 F.3d at 832.  It is appropriate, then, for plaintiff to

10   pursue her motions to quash in the district court that issued the third party subpoenas.  While the

11   court has found that the records sought by defendants at issue here are relevant and not protected

12   by a privilege because of plaintiff's allegations, plaintiff did not have the benefit of this finding

13   prior to filing her motions to quash.  Given the court's holding today, plaintiff is free to withdraw

14   her motions to quash in the District of Columbia and District of Maryland.  However, the court

15   will not order her to do so.

16          Finally, the court will not order plaintiff to obtain court approval before filing further

17   motions to quash.  The court has ruled that the documents are discoverable and plaintiff should

18   take this holding into consideration when considering filing any future motions to quash.

19          Therefore, defendants' motion for a protective order is denied.

20   VII.   CONCLUSION

21   Accordingly, IT IS HEREBY ORDERED that:

22          1. Plaintiff's amended motion to quash (ECF No. 101) is denied;

23          2. Plaintiff's amended motion for protective order (ECF No. 100) is denied;

24          3. Defendants' motion to compel independent medical examination (ECF No. 102) is

25   granted;

26          4. Plaintiff shall appear for an independent medical examination by Dr. Mark Mills, M.D.,

27   on August 21, 2013, at 9:00 a.m., at 6635 Hillandale Road, Chevy Chase, Maryland 20815; and

28   /////

1        5. Defendants' motion for protective order (ECF No. 103) is denied.

2    DATED:  August 19, 2013.

3
_____

4                      EDMUND F. BRENNAN
                     UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28